# CORTELYOU *v.* UNITED STATES OF AMERICA EX REL. THORPE.

### EVIDENCE; CONTRACTS; OFFICERS; MANDAMUS.

1. Debates in Congress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body.

2. A written contract, the terms of which are free from ambiguity and import a complete legal obligation, is conclusively presumed to record the intention of the parties thereto, in the absence of fraud, accident, or mistake.

3. Under the act of Congress of June 30, 1906 (34 Stat. at L. 759, chap. 3914), appropriating $10,000 for the purchase from a person named therein of the manuscripts for a new edition of certain State, territorial, and colonial charters and acts of Congress relating thereto, "prepared by him," on condition, however, that he should "prepare a complete index of the work and do all proofreading in connection with the preparation, printing, and publication thereof," it was the clear ministerial duty of the Secretary of the Treasury—enforceable by mandamus—to pay to such party the amount of the appropriation upon the certification by the public printer that the party named had delivered to him manuscript answering the description of that mentioned in the act, and had complied with the conditions thereof; and such duty could not be avoided by the Secretary, by the statement in his return to the petition for the writ that in his negotiations with Congress the petitioner had represented that the work offered for purchase would contain certain editing and revision by another party, and that the manuscript delivered had not been so edited and revised by

such other party, and that therefore the petitioner had not complied with the act by delivering the specific and particular manuscript referred to in the act. (Following *United States ex rel. Daly* v. *Macfarland*, 28 App. D. C. 552; *Garfield* v. *United States*, 30 App. D. C. 165; *Griffin* v. *United States*, 30 App. D. C. 291; *Drake* v. *United States*, 30 App. D. C. 312; and *United States ex rel. Newcomb Motor Co.* v. *Moore*, 30 App. D. C. 464.)

No. 1912. Submitted October 6, 1908. Decided October 21, 1908.

HEARING on an appeal (specially allowed) by the respondent, the Secretary of the Treasury, from an order of the Supreme Court of the District of Columbia, overruling his motion to deny the writ of mandamus, to discharge the rule laid on him to show cause why the writ should not issue and to dismiss the petition for the writ, such motion having been made after an answer was filed to the petition for the writ and a demurrer to the answer had been overruled and the answer traversed.

*Remanded.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District, and appellant's contentions are contained in the following assignments of error:

"First. The court erred in overruling the motion to dismiss the petition and deny the writ of mandamus.

Second. The court erred in holding that he had jurisdiction to try the issue attempted to be raised by the traverse of relator.

Third. The court erred in holding that the action herein lies against the Secretary of the Treasury."

The appellee, Francis N. Thorpe, petitioner below, according to the averments of his petition, which he filed December 12, 1907, had for many years devoted himself to special studies and work in "State and Constitutional law, colonial charters, Constitutions, and organic laws of the United States, and, after eleven

years of labor devoted to the collaboration of material," present-
ed to Congress a petition praying for the publication of a new
edition of the charters, Constitutions, and organic laws of the
United States.   At the same time he presented a manuscript
prepared by himself, which he represented to Congress would
supply the omissions in the work known as the "Ben: Perley
Poore Compilation."   His efforts before Congress resulted in
the following appropriation being inserted in the sundry civil
expenses appropriation act for the year ending June 30, 1906
(34 Stat. at L. 759, chap. 3914):

"Charters and Constitutions: For the purchase from Profes-
sor Francis N. Thorpe of the manuscript for a new edition of
charters, Constitutions, and organic laws of all the States, terri-
tories, and colonies now or heretofore forming the United States,
and any acts of Congress relating thereto, prepared by him,
$10,000: Provided, That he shall prepare a complete index of
the work and do all proofreading in connection with the prepara-
tion, printing, and publication thereof, and the public printer
shall print and bind 6,000 copies of the work, of which 2,000
copies shall be for the use of the Senate and 4,000 copies for the
use of the House of Representatives."

This act was approved June 30, 1906.   Thereafter petitioner,
desiring information as to the method of payment, addressed
the Secretary of the Treasury through a letter written by a
member of Congress, and, on August 6, 1906, received informa-
tion from the Secretary "that the public printer should be com-
municated with in the matter, upon whose certificate of receipt
of the manuscript and index, and statement that the work there-
on has been performed, as required in the law, payment can be
made."   On August 8, 1906, the public printer, responding to a
letter from petitioner, said: "This appropriation is to be ex-
pended by the Treasury Department upon a certificate from the
public printer that the manuscript and index have been fur-
nished, and that the whole matter has been proofread."   There-
after, on May 2, 1907, petitioner addressed the following com-
munication to the public printer:

Mt. Holly, N. Jersey, May 2, 1907.

Hon. Chas. A. Stillings, Public Printer,

Washington, D. C.

Dear Sir:—

I hereby transmit and deliver to you the manuscripts of "Charters, Constitutions, and Organic Laws," the purchase of which from me was provided for by act of Congress of 30 June, 1906. Said manuscripts are complete, being a true and correct copy of the organic acts they purport to embody. Each and every act has been verified by me from authentic and official source or sources, said source or sources being cited and plainly shown in notes accompanying said manuscripts, copy herewith submitted and delivered. I hereby take occasion to declare that the aggregate manuscripts herewith transmitted contain all and every said charters, Constitutions and organic laws, or appropriate citation thereof, said citation or citations being of supplementary and subordinate acts, a knowledge of which may be desired as explanatory, in some sense, of charters, Constitutions and organic laws as referred to in said act of Congress above cited.

I believe that the manuscripts comprise the complete, authentic, and up-to-date transcript of the original acts, severally and as a whole. The entire work has been in preparation since September, 1885, and has received my personal attention, revision, and labor. The manuscripts comprise 5,000 pages, more or less.

Yours very truly,

(S'g'd)                    Francis N. Thorpe.

Upon the delivery of the above communication accompanied by the manuscript therein described, the public printer on the same day delivered to the petitioner the following receipt:

May 2, 1907.

Received of Professor Francis N. Thorpe, of Mount Holly, N. J., manuscript copy, said to contain "Charters, Constitutions

and Organic Laws," except the index, subject to the conditions provided for in the act of June 30, 1906 (Pamphlet Laws of the first session, Fifty-ninth Congress, page 759).

(S'g'd)                                          Chas. A. Stillings,
                                                    Public Printer.


Petitioner thereafter corrected and returned to the public printer the galley proofs and page proofs of the work, and prepared a complete index thereof, and read and returned the proof in connection with the preparation, printing, and publication thereof, and the work was set up in type in five volumes. Thereafter, on September 9, 1907, petitioner received the following communication from the public printer:

Office of the Public Printer,
Washington, September 9, 1907.

Dear Sir:—

I have this day forwarded to the Secretary of the Treasury a certificate that you had furnished the manuscript for a new edition of charters, Constitutions, and organic laws of all the States, territories and colonies now or heretofore forming the United States, and any acts of Congress relating thereto, prepared by you, that you had prepared a complete index of the work, and that you had read proof in connection with the preparation, printing, and publication thereof.

Very truly yours,

(S'g'd)                                          Chas. A. Stillings,
                                                    Public Printer.

Prof. Francis N. Thorpe, Indian Arrow,
            Vineyards, North East, "Pa."


Thereafter petitioner wrote the Secretary of the Treasury, and, on October 30, 1907, received a communication to the effect that, the act being silent as to the official certification to the Treasury Department as a basis for payment, the Department would await further consideration of Congress. On November 8, 1907, in response to further communications from petitioner,

the Treasury Department informed him that it had been decided to await the approval of such person or persons as Congress might designate to pass upon the question as to whether or not he had completed the work as provided. Thereupon petitioner personally interviewed the Secretary of the Treasury, and was informed that objections had been urged with that official from two persons who did not think the manuscript complete. The Secretary declined to state who made the objections, or what they were.

The rule to show cause was issued on this petition, and respondent made answer. In this answer it is stated that, desiring a new edition of charters, Constitutions, and organic laws of all the States, territories, and colonies which would be sufficiently chronological, and which would contain complete information on the subject at the present time, Congress commenced negotiations "to purchase a manuscript for a new edition of the charters, Constitutions, and organic laws, which would supply this *desideratum,* and petitioner herein advocated the purchase of the work, which he represented would be definitely and distinctly a new edition along these lines, and which he had been preparing for some time, and which, before its final submission to the government in the event of its purchase by the government, would receive the benefit of the collaboration with the petitioner of Dr. Benjamin F. Shambaugh, Professor of History in the University of Iowa, and a historical scholar who had given much attention to specialization on these subjects. Accordingly, the work, treatise, or manuscript represented by the petitioner herein to Congress as the work to be delivered to the government in the event of its purchase thereof was not any manuscript for a new edition of the charters, Constitutions and organic laws, nor any edition thereof which the petitioner might have, but a definite, distinct, particular manuscript then represented and described to Congress by petitioner at the time of this negotiation, prior to the passage of the act approved June 30, 1906; it was an individualized literary entity, offered on the one side by petitioner as for sale, and being considered by Congress on the other side as for purchase. In it was to be found a new, and

therefore complete, edition of all the charters, Constitutions and organic laws of the States, territories, and colonies now or heretofore forming the United States and any acts of Congress relating thereto. Furthermore, as above set forth, this particular work represented by petitioner to Congress as the work offered for sale was to contain certain editing and revision by Professor Shambaugh. Such was the particular manuscript which was offered by petitioner for sale to Congress, and constituted a specific and distinctly featured literary entity, and being both a new edition of this old subject and one as to some parts of which Professor Shambaugh had collaborated with petitioner, and the whole prepared by him. This being offered for sale to Congress, the Congress relied upon the purchase and the acquisition of this specific thing represented by petitioner, and agreed to purchase the same, and appropriated $10,000 therefor."

The answer admits the sending to the Secretary of the Treasury by the public printer of the certificate described in said letter of September 9, 1907, from the public printer to petitioner, but denies that the work submitted to the public printer and to which the certificate referred, "was the identical work presented to Congress by petitioner and agreed upon to be purchased and delivered." The answer further sets forth that, after the delivery of the manuscript to the public printer, "it was discovered by Honorable Albert F. Dawson, member of the House of Representatives from the State of Iowa, with whom as the representative of Congress the negotiations for the purchase of petitioner's work were had, and who was thoroughly familiar with all the details leading to the passage of the act appropriating $10,000, and who was instrumental in securing the passage thereof, and who, in that behalf, represented the Congress in its determination to purchase a certain specific work from the petitioner, and to whom a definite outline of the particular manuscript was exhibited at the time of the making of the contract of purchase, which later he, the said Dawson, succeeded in having embodied in the aforesaid act on the part of Congress, that the manuscript submitted to the public printer and received by him was not the identical manuscript, nor the identical,

specific, individual thing which Congress agreed to buy and for whose purchase it appropriated $10,000. The manuscript delivered to the public printer was not the new edition represented to the Congress, and the collaboration of Prof. Shambaugh was wholly omitted in the manuscript delivered. The act of Congress above referred to being silent as to a provision for official certification that the work as delivered is the identical work agreed to be purchased, this respondent was notified by Representative Dawson, on behalf of the Congress, that the work as submitted by the petitioner to the public printer was not the identical work submitted to Congress and agreed to be bought by it, and that the same was not accepted. Upon thus being notified that petitioner had not complied with the act of Congress, your respondent declined to make payment as set out in the said letters."

The answer further denies that any duty is imposed upon the public printer to determine whether the manuscript delivered is the manuscript offered for sale and agreed to be purchased. The answer concludes with a disclaimer that the respondent, "or anyone for him, has attempted to sit as a literary or historical expert, or that he has attempted to criticize any particular features of the work submitted by the petitioner, but that he declines to pay the money appropriated by the act solely because he is informed and believes that the petitioner has not complied with the act in delivering the specific and particular manuscript referred to in the act."

To this answer a demurrer was interposed, and, upon the demurrer being overruled, the answer was traversed. Thereupon respondent moved for the denial of the writ, the discharge of the rule, and the dismissal of the petition. The motion was denied, and this special appeal followed.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stuart McNamara,* Assistant, for the appellant.

*Mr. Hampton L. Carson, Mr. George E. Hamilton,* and *Mr. John W. Yerkes* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The first contention of appellant is that the court was without jurisdiction to entertain this suit because he says the object of the suit is to require the payment out of the Treasury of the United States of a sum of money as a consideration of the contract which exists between the appellee and the government.

The appellee, on the other hand, insists that the act of Congress, being free from ambiguity, contains the sole evidence of the contract, and that the averments in the petition and the admissions of the answer showing full compliance on the part of petitioner with the provisions of the act, the respondent is deprived of any discretion in the matter, and nothing remains to be done but the purely ministerial act of payment.

If, in determining the congressional intent, we are to be controlled by the language employed by Congress in making the appropriation in question, we think it clearly follows that, upon the certification by the public printer that Professor Thorpe had furnished a manuscript answering the description of that mentioned in the act, and had complied with all other conditions affixed to the appropriation, it became the duty of the Secretary of the Treasury to make payment without further delay or question, and that, upon his refusal to perform the purely ministerial duty thus imposed upon him, the writ of mandamus should have issued.

The real question in the case, therefore, is, Are we permitted, in the circumstances disclosed by the petition and answer, for both are before us, to go outside the act itself to determine its meaning? The act is couched in direct and unequivocal language. In it Congress appropriates $10,000 for the purchase from Professor Francis N. Thorpe of the manuscript for a new edition of the charters, Constitutions and organic laws of all the States, territories, and colonies now or heretofore forming the United States, and any acts of Congress relating thereto, *"prepared by him,"* on condition, however, that he "shall prepare a complete index of the work and do all proofreading in connection with the preparation, printing, and publication

thereof." It is now contended that the act should be interpreted .as though it read: "For the purchase from Professor Francis N. Thorpe of the manuscript for a new edition of charters, ·Constitutions, and organic laws of all the States, territories, and ·colonies now or heretofore forming the United States, and any .acts of Congress relating thereto, prepared by him, $10,000," *.and which, before its final submission to the government, shall receive the benefit of the collaboration with Professor Benjamin F. Shambaugh, Professor of History in the University of Iowa,* the basis for this contention being the statement of a member of Congress that "in his negotiations with Congress Professor Thorpe represented that the work offered for purchase would ·contain certain editing and revision by Professor Shambaugh."

In *United States* v. *Trans-Missouri Freight Asso.* 166 U. S. 290, 318, 41 L. ed. 1007, 1019, 17 Sup. Ct. Rep. 540, where the ·court was asked to refer to the debates in Congress to determine the proper determination to be placed upon the act in which the debates culminated, it was said: "All that can be determined from the debates and reports is that various members had vari- ·ous views, and we are left to determine the meaning of this act, .as we determine the meaning of other acts, from the language used therein.   There is, too, a general acquiescence in the ·doctrine that debates in Congress are not appropriate sources of ·information from which to discover the meaning of the language ·of a statute passed by that body.   *United States* v. *Union P. R.* Co. 91 U. S. 72, 79, 23 L. ed. 224, 228; *Aldridge* v. *Williams,* 3 How. 9, 24, 11 L. ed. 469, 475, Taney, Chief Justice; *Mitchell* ·v. *Great Works Mill & Mfg. Co.* 2 Story, 648, 653, Fed. Cas. No. 9,662; *R.* v. *Hertford College,* L. R. 3 Q. B. Div. 693, 707. The reason is that it is impossible to determine with certainty ·what construction was put upon an act by the members of a legislative body that passed it by resorting to the speeches of individual members thereof.   Those who did not speak may not have agreed with those who did; and those who spoke might .differ from each other; the result being that the only proper way ·to construe a legislative act is from the language used in the act, .and, upon occasion; by a resort to the history of the times when .it was passed."

An additional and very cogent reason exists in this case why a departure from the above rule of interpretation should not be made. It is clear that the act, from the terms of which we are asked to depart, evidences a contract between Professor Thorpe and the United States. The terms of the contract are therein fully set forth. Congress evidently entertaining respect for the learning and ability of Professor Thorpe, and reposing special confidence in him, appropriated $10,000 for the purchase of a manuscript "prepared by him," and because of such respect and confidence required no review of his work prior to its acceptance under the appropriation. We are now asked to hold that Congress did not mean what it said; that the terms of the contract are different from and inconsistent with those stated in the act itself; and that what Congress intended to buy, and did buy, was a manuscript prepared by Professor Thorpe, assisted by Professor Shambaugh. This contention, in view of the language of the contract, is not, in our view, entitled to serious consideration. That a written contract, the terms of which are free from ambiguity and import a complete legal obligation, is conclusively presumed to record the intention of the parties thereto in the absence of fraud, accident, or mistake, is too elementary a proposition to require elaboration here.

There is no sufficient averment of fraud here. Subjected to analysis the answer in effect admits that the manuscript delivered to and accepted by the public printer answers every requirement of the appropriation, which, as above noted, contains the stated terms of the contract. The averment that, after having been offered one thing, Congress deliberately and in stated terms contracted for another thing,—for that we think is the effect of the averment upon which we are asked to predicate fraud,—cannot be permitted to justify the admission of parol evidence.

Had Professor Thorpe induced Congress to purchase a manuscript on the strength of a statement that it would be revised and edited by Professor Shambaugh, it is inconceivable that Congress should have specifically provided in the act embodying the terms of its contract with Professor Thorpe that the manuscript.

should be prepared by *him.* In other words, had Congress desired that Professor Shambaugh contribute in any way to the work, manifestly the act would have so stated.

If the manuscript, although answering every requirement of the stated contract, is not in fact what Congress anticipated it would be, the responsibility lies with Congress. Having specifically prescribed the conditions upon which the appropriation was made, and not having clothed anyone with authority to review the manuscript delivered, it is conclusively to be presumed that the basis of this action by Congress was its confidence in Professor Thorpe and respect for his literary attainments.

It is true that the writ of mandamus does not lie where the duty sought to be enjoined is discretionary, or where the right to the performance of the act prayed for is not established or clear. Where, however, a government official refuses to perform a ministerial act to the injury of a citizen, the writ will usually issue. In the present case the answer, in substance, admits the delivery to the public printer of a manuscript corresponding to the terms of the act making appropriation therefor, and compliance by appellee with the other conditions of said act. The answer further admits that the public printer duly certified the foregoing facts to the Secretary of the Treasury. We fail to see wherein that official has any discretion in the premises. When the public printer certified to him that Professor Thorpe "had furnished the manuscript for a new edition of charters, Constitutions and organic laws of all the States, territories, and colonies now or heretofore forming the United States, and any acts of Congress relating thereto, prepared by him, that he had prepared a complete index of the work, and that he had read proof in connection with the preparation, printing, and publication thereof," we think it became the clear duty of the Secretary to make payment therefor, and that upon his refusal to do so he was subject to the remedy herein invoked: *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552; *Garfield* v. *United States,* 30 App. D. C. 165; *Griffin* v. *United States,* 30 App. D. C. 291; *Drake* v. *United States,* 30 App. D. C. 312; *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464.

The ruling that, upon receipt of the foregoing certificate of the public printer, the duty of the Secretary of the Treasury to make payment under the contract became fixed and certain, and, therefore, ministerial, is in effect a ruling that the demurrer to the answer should have been sustained. The second assignment of error consequently becomes unimportant and need not be considered.

The third assignment of error does not differ materially from the first, and therefore does not require separate consideration.

The cause will be remanded, with costs to appellee, and with directions that further proceedings be had not inconsistent with this opinion. *Remanded.*