1841 COLUMBIA ROAD TENANTS ASSOCIATION, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,

1841 Columbia Road Limited Partnership, Intervenor.

No. 89–608.

District of Columbia Court of Appeals.

Submitted May 10, 1990.
Decided June 15, 1990.

Eric M. Rome, filed a brief, for petitioner.

Charles L. Reischel, Deputy Corp. Counsel, and Herbert O. Reid, Sr., Acting Corp. Counsel, Washington, D.C., filed a response to Order to Show Cause on behalf, of respondent.

Richard G. Wise, Washington, D.C., filed a brief, for intervenor.

Before ROGERS, Chief Judge, SCHWELB and FARRELL, Associate Judges.

I

SCHWELB, Associate Judge:

On May 10, 1989, the District of Columbia Rental Housing Commission affirmed a decision of the Rent Administrator granting intervenor-landlord's capital improvement petition, which had been filed pursuant to D.C.Code § 45–2520 (1986). The landlord had proposed, among other things, to convert a freight elevator to passenger use. The landlord sought in its petition to allocate the cost of the repairs equally to the one hundred residential apartments and the fifteen commercial units in the building, and requested that the rent ceiling for each residential unit be adjusted accordingly and increased by $23.00.

The tenants opposed this method of allocation, contending that the commercial units were responsible for a disproportionate amount of traffic into the elevators and that they should be required to absorb a greater portion of the cost. The tenants proffered a one-day survey which they had made during working hours and which showed that many of the users of the elevator travelled to the floor where the commercial units were located, and that there was comparatively less traffic to the other floors. Noting that the landlord acknowledged that its method of allocation did not reflect actual usage, the tenants claimed that this required the Commission to disapprove the petition.

The landlord countered that the tenant study did not include evenings and weekends, when the offices were closed and the traffic was almost entirely residential. The landlord also contended that, under the terms of the statute, relative use was irrelevant.

Observing that the tenants had conceded that their survey was not scientific or complete, the hearing examiner ruled that the landlord's method of allocation was consistent with the statute and more practical than the tenants' approach. The Commission affirmed the examiner's decision, stating in pertinent part that

> the tenants themselves admitted their survey was limited in time and depth. The hearing examiner was entitled to give it the limited weight that he did and to accept the housing provider's method of allocation....

II

District of Columbia Code § 45–2520(c) (1986) provides in pertinent part:

> Any decision of the Rent Administrator under this section shall determine the adjustment of the rent ceiling
>
> (1) In the case of a building-wide major capital improvement, by dividing the cost [of the improvement] over a 72–month period of amortization and by dividing the result *by the number of rental units* in the housing accommodation. No increase under this paragraph may exceed 20% above the current rent ceiling.

(Emphasis added). As the foregoing language readily reveals, the legislative plan treats all rental units alike. Although the statute does not explicitly say so, the evident import of its words is that all of the units are to be assessed equally, subject to the 20% limitation. There is nothing in the statute requiring allocation of the costs of a capital improvement to particular units

on the basis of the resident's actual utilization of that improvement.

██ In the present case, the Commission approved a plan which, in accordance with the statutory command, treated every unit—residential or commercial—alike.[1] Our review of agency action is deferential, and we can overrule the Commission's interpretation of the Rental Housing Act only if it is plainly wrong or inconsistent with the legislative purpose. *Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 550 A.2d 51, 52 (D.C.1988). Application of this standard to the issue here presented compels us to affirm the Commission's decision.

██ In so holding, we reaffirm that the Rental Housing Act is a remedial statute which must be liberally construed to achieve its purposes. *Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1297, 1299 (D.C.1990). We also recognize that the statutory formula could work an injustice in an individual case. The sole resident of an efficiency apartment on the third floor probably uses the elevator far less than do the multiple occupants of a larger unit on the eighth floor.

Under the Act, however, the rent ceilings of the two units can be raised by the same amount, so long as the increase does not exceed 20%, and this might rationally be viewed as less than the most equitable resolution of the problem.[2] It is not within the judicial function, however, to rewrite the statute, or to supply omissions in it, in order to make it more "fair" by substituting allocation based on usage for the statutory formula of equal assessment of each unit. *See Frain v. District of Columbia,* 572 A.2d 447, 448 (D.C. March 30, 1990); *James Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 49–50 (D.C.1989).

### III

For the foregoing reasons, the decision of the Rental Housing Commission must be and it is hereby

*Affirmed.*

---

1. Section 45–2520(c), as we have noted, speaks in terms of dividing the cost of a capital improvement among "rental units." A commercial apartment is not a rental unit within the meaning of the Rental Housing Act, *see* D.C.Code § 45–2503(33) (1986), because commercial tenants are not protected by rent control. While claiming that the statute did not require it to allocate any of the costs of the improvement to the commercial units, the landlord nevertheless did so, and assessed residential and commercial tenants alike.

   Neither party challenged the inclusion of commercial tenants in the group whose rent would be increased in order to pay for the capital improvement, and the Commission approved *this* procedure. This was entirely reasonable. We think it obvious that the allusion in § 45–2520(c) to rental units was not written with the present situation in mind, nor was it designed to require residential tenants but not commercial tenants to finance improvements beneficial to both groups. It would be entirely incongruous, and contrary to the purposes of the Act, to require residential tenants, whose rents are subject to rent control, to absorb the entire cost of improvements which will also be utilized by commercial tenants, who are not protected by rent control at all.

2. Under the landlord's plan, the rent in some apartments was raised as much as 11.27%, while in others the increase was as small as 4.29%.