**Nadia OURIAGHLI, Appellant,**

v.

**Donald MOORE, Appellee.**

**No. 91–CV–1373.**

District of Columbia Court of Appeals.

Submitted Feb. 10, 1993.
Decided March 9, 1993.

Nadia Ouriaghli filed a brief pro se.

Jacob Goldberg, Washington, DC, filed a brief for appellee.

Before TERRY, SCHWELB and SULLIVAN, Associate Judges.

SCHWELB, Associate Judge:

This appeal from the trial court's refusal, without a hearing, to vacate a default judgment presents us with several quite unusual allegations. According to the defendant, Nadia Ouriaghli, who appears *pro se*, plaintiff Donald Moore's process server, who claimed to have delivered the summons and complaint to Ms. Ouriaghli's husband, actually served the wrong person. In fact, the process server claimed in his return to have served someone who, Ms. Ouriaghli says, does not look anything like her husband. Ms. Ouriaghli also alleges that the trial judge's law clerk gave her erroneous information which led to her failure to appear at a critical hearing and to the consequent denial of her motion to reopen the case. Concluding that an evidentiary hearing should have been held at least with respect to the question whether Ms. Ouriaghli was misled by the law clerk, we vacate the judgment and remand for further proceedings.

I.

Moore brought this action to recover an escrowed earnest money deposit of $10,000.

---

He alleged that Ms. Ouriaghli had failed to carry out an agreement to purchase certain real property from him, and sought, pursuant to a provision of the contract, to recover the earnest money deposit as liquidated damages. The complaint was filed on February 11, 1991.

On February 14, 1991, the plaintiff's process server executed an "Affidavit of Service" in which he claimed to have served Ms. Ouriaghli at her residence by leaving a copy of the summons and complaint with her husband, Franklin Lamb, who was described in the affidavit as "W.M. 5 10 170 Blk Hair." No timely answer or responsive pleading was filed on Ms. Ouriaghli's behalf. On March 12, 1991, Moore's attorney filed an "affidavit in support of default." On March 19, 1991, the clerk entered an order of default.

On March 20, 1991, Ms. Ouriaghli responded with a *pro se* motion "to deny plaintiff's motion for a default judgment." She alleged that she had not been served, that she had received no notice of Moore's complaint, and that she was ready to contest the claim on the merits. Attached to her motion was an affidavit by Franklin Lamb, who represented that he had never been served with any papers in the suit, that he had found none at his residence, and that he had not been in the District of Columbia on February 14, 1991, the day on which the process server claimed to have effected service.[1]

On June 12, 1991, in spite of the pendency of Ms. Ouriaghli's counter-motion, the trial court entered judgment in favor of Moore in the amount of $10,000 and costs. On June 25, 1991, Ms. Ouriaghli moved to set aside the judgment, reiterating her prior arguments and requesting a hearing on the matter. In a supplemental submission, she represented as follows:

> Plaintiff also continues to insist that Defendant was served in this matter. [Neither] the Defendant nor her husband were ever served in this matter. Plain-

tiff, in insisting otherwise, offers a notation on the alleged proof of service which states "W.M. 5 10, 170. blk hair." In truth, Defendant's husband is 6 feet, 4 inches, 230 pounds, and blond/light brown hair. Were Plaintiff to be granted a hearing in this matter on the question of Validity of Service, the Court could view Defendant's husband and make its own determination of whether this was the individual whom Plaintiff claims to have served. Moreover, in a sworn affidavit, Plaintiff's husband states that he was not even in the Washington, D.C. area during the time Plaintiff claims he was served. At a hearing, the process server could be asked whether Mr. Lamb was indeed the person he claims to have served, and the credibility of both sides could be assessed.

By order dated August 5, 1991, the judge set a hearing on Ms. Ouriaghli's motion for September 30, 1991. The order provided, in pertinent part, that

> [a]ll counsel and/or parties should be present with any and all necessary witnesses and argument for the court to determine whether a default was properly entered and/or whether it should be vacated.

On the scheduled hearing date, however, neither Ms. Ouriaghli nor any attorney representing her appeared before the court. Ms. Ouriaghli's husband did appear, and was apparently ready to testify that he had not been served with the summons and complaint. The judge ruled, however, that, as a lay person, her husband could not act as counsel for Ms. Ouriaghli. The judge therefore denied the motion to vacate the judgment on the ground that Ms. Ouriaghli had failed to prosecute it.

On October 3, 1991, Ms. Ouriaghli filed a *pro se* motion for reconsideration, in which she alleged the following:

> 1. Defendant was misinformed by the clerk of Judge Wolf concerning the necessity of her presence at the August 20,

---

1. Ms. Ouriaghli subsequently filed an amendment to her motion claiming that she stood ready to perform her obligations under the contract on which the suit was based, and that the

funds had been set aside for that purpose in the form of a cashier's check placed with a financial institution.

1991 [2] hearing. As her testimony was not necessary (there was no claim that she was served) she was advised that her husband (who was claimed to have been served) must attend.

2. Defendant was in France for urgent medical treatment connected with her pregnancy, and had she known of the necessity of her presence on Aug. 20 she would have requested another date after her recovery and return.

3. Defendant will be available and present at any hearing which the Court might allow after October 8, 1991.

On October 31, 1991, without further hearing, the judge denied Ms. Ouriaghli's motion for reconsideration. This appeal followed.

## II.

The narrow question presented by this appeal is whether the trial judge erred by denying Ms. Ouriaghli a hearing on her motion for reconsideration. The facts alleged by Ms. Ouriaghli in her motion—namely, that the judge's law clerk assured her that she need not be present at the hearing if her husband (her sole witness) were present—would, if proved, at least potentially entitle her to relief. Accordingly, we conclude that a hearing should have been held and that the judge should have made findings with respect to Ms. Ouriaghli's allegations.

Ms. Ouriaghli cannot and does not challenge the judge's holding that her husband, a non-attorney, could not represent her at the September 21, 1991 hearing. *See* Super.Ct.Civ.R. 101(a)(2). Ms. Ouriaghli had the right to represent herself, but she was not present in court. Accordingly, unless the alleged conversation between Ms. Ouriaghli and the judge's law clerk had the legal consequence of excusing Ms. Ouriaghli's non-appearance, the judge did not

abuse his discretion by denying the motion to vacate the default judgment.

In her motion for reconsideration, however, Ms. Ouriaghli alleged a new and potentially dispositive fact, namely, that she had relied to her detriment on incorrect information provided to her by the judge's law clerk. In effect, she claimed to have been "affirmatively misled ... by some action or conduct of the trial court," *see Robinson v. Evans*, 554 A.2d 332, 335 (D.C.1989); [3] *cf. Frain v. District of Columbia*, 572 A.2d 447, 450–51 (D.C.1990), into failing to appear at the hearing on her motion to vacate the default judgment. Such a claim has at least colorable merit and, while the trial court doubtless has considerable discretion in determining whether comments by a law clerk could relieve Ms. Ouriaghli of obligations set forth in rules applicable to all litigants, such discretion cannot be exercised judiciously unless the court has been apprised of all of the relevant facts. *See, e.g., In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991).

In the present case, there are equitable considerations which support Ms. Ouriaghli's contention that the judge should have held an evidentiary hearing on the motion for reconsideration. The court's denial of that motion sustains a judgment against Ms. Ouriaghli although there has been no determination of the merits of Moore's claim against her. Ms. Ouriaghli's motion for reconsideration thus presented the trial court with a new and potentially persuasive reason for vacating the default judgment against her. The strong judicial policy favoring trial on the merits will often justify reversal where even a slight abuse of discretion has occurred. *See, e.g., Dunn v. Profitt*, 408 A.2d 991, 993 (D.C.1979) (per curiam).

Moreover, Ms. Ouriaghli has represented to the court that her husband is half a foot taller and sixty pounds heavier than the

---

**2.** Presumably, Ms. Ouriaghli meant *September 20*, 1991.

**3.** We stated in *Robinson* that "[we] would be most reluctant to rely solely on the statements or actions of an unidentified court functionary as grounds for bypassing the jurisdictional re-

quirements of our rules." 554 A.2d at 336. We reiterate this reluctance, but nevertheless think it incumbent upon the trial court to permit Ms. Ouriaghli to develop an evidentiary record and to apply the applicable rules of law to that record.

individual to whom the process server claims to have delivered the summons and complaint. She also claims that her husband's hair is "blond/light brown," while the process server described the individual in question as having black hair. Ms. Ouriaghli's husband has stated under oath that the papers were not served on him, and that he was not in the District of Columbia on the date in question. The truth or falsity of representations regarding the husband's physical appearance could readily be ascertained at an evidentiary hearing. If these representations are true,[4] and if Ms. Ouriaghli acted with diligence as soon as she learned of the suit,[5] it would be manifestly inequitable to enforce a judgment against her. This is particularly true in the absence of any discernable showing of prejudice to Moore.

Lest we be misunderstood, we emphasize the limits of our decision. We hold only that an evidentiary hearing must be held on Ms. Ouriaghli's allegation that she was affirmatively misled by the trial judge's law clerk into failing to appear at the September 30, 1991 hearing. The court must determine what, if any, representations were made to her by the law clerk and whether, under all of the circumstances, Ms. Ouriaghli's reliance on any such representations was reasonable. If no misleading representation was made,[6] or if under all of the circumstances Ms. Ouriaghli's reliance was unreasonable, then judgment by default is appropriate. If Ms. Ouriaghli can establish that the law clerk provided her with incorrect information on which she reasonably relied to her detriment, however, the trial court must hold an evidentiary hearing on Ms. Ouriaghli's motion to set aside the default judgment and must make appropriate findings as to whether she had proper notice of the suit.

4. If Ms. Ouriaghli's allegations were shown to be false, she would of course be subject to sanctions for deceiving the court. *See* Super.Ct.Civ.R. 11.

5. As previously noted, Ms. Ouriaghli filed her initial motion to "deny plaintiff's motion for a default judgment" on March 20, 1991, eight days after the affidavit of default by plaintiff's counsel, and one day after the entry of the default order.

III.

For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

6. In general, a mistake of law by counsel will not warrant setting aside a judgment. *See, e.g., Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801, 804–05 & n. 10 (D.C.1984). The same principle would ordinarily apply to a party who has elected to represent herself, although we note that in the present case the amount in controversy is relatively modest, and Ms. Ouriaghli's reluctance to employ counsel is understandable.