**DISTRICT OF COLUMBIA, Appellant,**

v.

**Todd MORRISSEY, Appellee.**

No. 95–CT–608.

District of Columbia Court of Appeals.

Argued Oct. 13, 1995.
Decided Nov. 30, 1995.

ty Corporation Counsel, and Rosalyn Calbert Groce, Assistant Corporation Counsel, were on the brief, for appellant.

Michael L. Fayad, with whom Grail P. Walsh, Washington, DC, was on the brief, for appellee.

Before SCHWELB, KING and REID, Associate Judges.*

SCHWELB, Associate Judge:

Todd Morrissey was charged with one count of underage possession of an alcoholic beverage in violation of D.C.Code § 25–130(a) (1995). The trial judge dismissed the information on the ground that it failed to state a misdemeanor offense. The District of Columbia contends on appeal that the offense charged is a crime which carries a maximum punishment of a year in prison and a fine of $1,000, as well as suspension of driving privileges. Although the statutory penalty appears disproportionate to the offense, we are compelled by the language and structure of the statute to agree with the District. Accordingly, we reverse the decision of the trial court and remand the case with directions to reinstate the information.

## I.

### FACTUAL BACKGROUND [1]

On August 27, 1994, at about 9:10 p.m., Officer Avis Ray observed Morrissey and a companion walking away from Dixie Liquor Store, located at 3429 M Street, N.W., Washington, D.C. Morrissey, who is an undergraduate student at Georgetown University, was carrying two twelve-packs of beer. Officer Ray stopped Morrissey and his companion on the sidewalk, identified herself as a police officer, and asked whether they had proof of their age. Morrissey told Officer Ray that he was nineteen years old, and his friend indicated that he was eighteen. Officer Ray informed the young men that they were not old enough to purchase or possess alcohol legally in the District of Columbia.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Garland Pinkston, Jr., Acting Corporation Counsel at the time the brief was filed, and Robert R. Rigsby, Depu-

* Judges KING and REID join all but Part V of Judge SCHWELB's opinion.

1. Our factual statement is taken primarily from the affidavit filed by Officer Avis Ray of the Metropolitan Police Department in support of her application for an arrest warrant.

They told the officer that a stranger had bought the alcohol for them. Officer Ray seized the beer, and Morrissey and his friend were allowed to remain at liberty.

Five weeks later, on October 6, 1994, Morrissey was arrested on the Georgetown University campus pursuant to an arrest warrant. He was arraigned on the following day on a charge of underage possession of alcohol, in violation of D.C.Code § 25–130(a). Morrissey filed a motion to dismiss the information and, following a hearing, the trial judge issued a written order granting the motion. This appeal followed.

## II.

### STATUTORY BACKGROUND

This case turns largely on the construction of, and interplay between, two sections of the Alcoholic Beverage Control Act, D.C.Code § 25–101 *et seq.* (1995) (the ABC Act). In order to understand the contentions of the parties and the decision of the trial judge, it is necessary to set forth the provisions in question.

Section 25–130, the statute under which Morrissey was charged, provides in pertinent part:

(a) No person who is under 21 years of age shall purchase, attempt to purchase, possess, or drink any alcoholic beverage in the District....

\* \* \* \* \* \*

(c) In addition to the penalties provided in § 25–132, any person who violates any provision of this section shall be subject to the following additional penalties:

(1) Upon the first violation, shall have his or her driving privileges in the District suspended for a period of 90 consecutive days.... [2]

Section 25–132(a) provides in pertinent part that

[a]ny person who violates any of the provisions of this chapter for which no specific penalty is provided ... upon conviction

thereof, shall be fined not more than $1000 or imprisoned for not more than 1 year, or both.

Section 25–132(c) states that "[p]rosecutions for violations of this chapter shall be on information filed in the Superior Court of the District of Columbia by the Corporation Counsel...." [3]

Section 25–130 has been amended several times in recent years, and some of that history is relevant to the issue before us. Prior to 1993, the ABC Act did not prohibit underage possession of alcohol at all. Until that year, Section 25–130(b) set the drinking age at twenty-one and proscribed the consumption of alcoholic beverages in the District by persons under that age. D.C.Code § 25–130(b) (1991), *subsequently amended by* 40 D.C.Reg. 5820, 5821 (1993). At that time, Section 25–130(b) did not provide a specific penalty; consequently, underage drinking was subject to the residual penalties specified in Section 25–132.

Prior to the 1993 amendments, the ABC Act did prohibit minors from misrepresenting their age in order to obtain alcohol, and it contained its own misdemeanor penalties:

Any minor who falsely represents his age for the purpose of procuring any beverage shall be deemed guilty of a misdemeanor and be fined for each offense not more than $25 and, in default in the payment of such fine, shall be imprisoned not exceeding 10 days.

D.C.Code § 25–130(a) (1991), *subsequently amended by* 40 D.C.Reg. at 5821. Because the earlier version of Section 25–130(a) contained its own specific penalties, the residual misdemeanor penalties in Section 25–132(a) were inapplicable.

In 1993, the Council of the District of Columbia amended Section 25–130(a) to add a prohibition against the possession, purchase or attempted purchase of alcoholic beverages by minors in the District. 40 D.C.Reg. at 5821. The Council also added a penalty provision, Section 25–130(e), which

---

**2.** The statute goes on to provide for longer suspensions of driving privileges for repeat offenders.

**3.** Section 25–132(c) goes on to provide that felonies shall be prosecuted by the United States Attorney.

made all violations of Section 25–130 subject to various civil penalties, including suspension of driving privileges in the District for up to one year and a fine of between $100 and $300. *Id.* The Council stated in the preamble to the statute that its purpose in amending the ABC Act was "to establish stricter penalties, including suspension of driver's licenses for up to 1 year, for violations of the underage drinking provisions." *Id.* at 5820.

Section 25–130 was amended again in 1994 to read as it does today. The 1994 amendments eliminated the fine of $100 to $300 and added a cross-reference to the residual penalties in Section 25–132. The preamble to the legislation described the purposes of the relevant 1994 amendments as being "to make it illegal for persons under 21 years of age to purchase or possess alcoholic beverages; and to add the penalty of suspension of driving privileges in the District for up to 1 year for minors violating provisions of the act." 41 D.C.Reg. 1658 (1994).

### III.

### THE TRIAL JUDGE'S ORDER

The trial judge dismissed the information in this case on the ground that it "failed to state a misdemeanor offense."[4] The judge discerned a conflict between the language of Section 25–130(c) and the language of Section 25–132(a). He observed that violators of Section 25–130 are subject to loss of driving privileges "in addition to the penalties provided in § 25–132." *See* D.C.Code § 25–130(c). He noted that the penalties in Section 25–132, on the other hand, are residual penalties that are available, by the terms of Section 25–132, only for violation of "provisions of this chapter for which no specific penalty is provided." *See* D.C.Code § 25–132(a). The judge concluded that, because Section 25–130 contains its own specific penalties, "under the plain language of both Sec-

tion 25–130 and Section 25–132, the residual misdemeanor [penalties] cannot apply."

The trial judge stated that this interpretation of the statutory language was supported by a review of the legislative history. In addition, because the penalties under District law for possession of controlled substances,[5] driving while intoxicated,[6] and distribution of alcohol to minors[7] are all less severe than the residual misdemeanor penalties set forth in Section 25–132(a), the judge was of the opinion that "the classification of underage possession of alcohol as a misdemeanor offense under Section 25–132(a), which carries a penalty of up to one year in jail, is contrary to any logical and rational punishment scheme."

Alternatively, the trial judge concluded that the conflicting language in Sections 25–130(c) and 25–132(a) creates an "ambiguity" to which the rule of lenity must be applied:

> To the extent that Sections 25–130 and 25–132(a) present an ambiguity as to the applicable penalty, the [c]ourt is obliged to adopt the most lenient interpretation of the statute. Such an interpretation in this case leads the [c]ourt to conclude that the case must be dismissed for failure to state a misdemeanor offense.

The judge did not explain explicitly why his view that the residual misdemeanor penalties were inapplicable justified the dismissal of the information. Apparently, however, he was of the opinion that a statute punishable solely by suspension of driving privileges must be non-criminal in character.

### IV.

### LEGAL DISCUSSION

*A. Scope of Review.*

 The dispositive issue in this case— whether underage possession of an alcoholic beverage is a criminal offense—is one of statutory construction. The related issue

---

4. The judge adopted verbatim the proposed findings of fact and conclusions of law that were submitted by Morrissey's counsel.

5. D.C.Code § 33–541(d) (1995) ($1,000 fine and imprisonment for 180 days).

6. D.C.Code § 40–716(b)(1) (1995) ($300 fine and imprisonment for 90 days).

7. D.C.Code § 25–130.1(c) (1995) ($1,000 fine and imprisonment for 180 days).

whether Section 25–130 violations are punishable by the residual misdemeanor penalties in Section 25–132(a) likewise depends on the proper interpretation of various provisions of the ABC Act. The construction of a statute raises a "clear question of law," and we review the trial court's ruling *de novo*. *Office of People's Counsel v. Public Serv. Comm'n of the District of Columbia*, 520 A.2d 677, 681 (D.C.1987); *Railco Multi-Constr. Co. v. Gardner*, 564 A.2d 1167, 1169 (D.C.1989) (legislative intent is a "question of law").[8]

*B. The Statutory Language.*

Whether the information was properly dismissed depends on whether the conduct with which Morrissey was charged constitutes a criminal offense. If, as the District contends, the prohibition against underage possession of alcoholic beverages is punishable by imprisonment and a fine, that offense is plainly a crime, and the dismissal was improper. If, on the other hand, Section 25–130 violations are punishable only by suspension of the offender's driving privileges, the contention that the proscriptions in that statute are civil in character may become more plausible.

The ABC Act confers on the Corporation Counsel authority to bring "[p]rosecutions ... on information filed in the Superior Court." D.C.Code § 25–132(c). "Prosecutions on information" is terminology commonly used in criminal proceedings, and its use in Section 25–132(c) suggests that a violation of the Act constitutes a criminal offense regardless of the penalties available in a particular case. Moreover, Section 25–130(a) is found in the company of a number of proscriptions which can reasonably be viewed as criminal in nature. Section 25–130(b), for example, makes it unlawful, *inter alia*, to "present as proof of age an identification document which is in any way fraudulent, for the purpose of procuring an alcoholic beverage in the District." Section 25–130.1(a) proscribes the purchase of an alcoholic beverage for the purpose of delivering it to a person under the age of twenty-one, and violations of this section are expressly made punishable by a fine and imprisonment pursuant to Section 25–130.1(c). There is nothing in the statute to suggest that violations of the different subsections are to be prosecuted in different ways or in different fora.

Under the District of Columbia Traffic Act, D.C.Code § 40–701 *et seq.* (1995), the revocation of driving privileges is handled as a regulatory matter, rather than as a criminal proceeding. *See* D.C.Code § 40–703(b). The ABC Act, however, makes no reference to the Traffic Act, and there is nothing in the ABC Act itself to suggest that the proscriptions in Section 25–130(a) created only civil infractions. In any event, we agree with the District that the residual misdemeanor penalties in Section 25–132 apply to Section 25–130 violations, and that the applicability of those penalties presupposes that Section 25–130 is criminal in nature.[9]

To determine the punishment authorized by statute for violations of Section 25–130, we begin, as always, with the lan-

---

8. Morrissey contends that the trial judge made "factual" findings regarding the legislative history of the statute, and that these findings merit deference on appeal under the "clearly erroneous" standard. He relies on *Davis v. United States*, 564 A.2d 31, 35–37 (D.C.1989) (en banc), but that reliance is misplaced.

*Davis*, like other cases in which we have applied the "clearly erroneous" standard, involved evidentiary fact-finding. We defer to factual findings under the "clearly erroneous" standard because the trial judge is ordinarily in a better position than this court to assess credibility, and also because the determination of evidentiary fact has traditionally been the province of the trier of fact, even where the credibility of witnesses is not involved. In this case, by contrast, the evidentiary facts are essentially undisputed, and this court is in as good a position as the trial

judge to read and interpret the legislative history. If deference were accorded to a trial judge's reading of legislative history, then the same statute could be found to have a different meaning in two different cases, solely because two judges construed it differently. This court would then be required to uphold each of two irreconcilable interpretations of the same legislation, and trial courts would be confronted with inconsistent precedents.

9. Nothing in this opinion is to be construed as suggesting that the *administrative* suspension or revocation of driving privileges constitutes criminal punishment for purposes of the Double Jeopardy Clause. *See, e.g., State v. Jones*, 340 Md. 235, 666 A.2d 128 (1995); *cf. Purcell v. United States*, 594 A.2d 527, 530–31 (D.C.1991).

guage of the statute. "In interpreting a statute, we are mindful of the maxim that we must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning." *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 45 (D.C.1989) (citations omitted). "The words used, even in their literal sense, are the primary and ordinarily the most reliable source of interpreting the meaning of any writing." *Id.* at 46 (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (Learned Hand, J.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945)).

■ The language of Section 25–130, read in isolation, is unambiguous—violations are punishable both by suspension of driving privileges and by fine and imprisonment as specified in Section 25–132. But Section 25–132, read alone, is likewise clear—the residual penalties apply only to offenses which do not specify their own penalties. "[S]tatutory provisions are to be construed not in isolation, but together with other related provisions." *Carey v. Crane Serv. Co.*, 457 A.2d 1102, 1108 (D.C.1983) (quoting *United Mine Workers of Am. v. Andrus*, 189 U.S.App.D.C. 110, 114, 581 F.2d 888, 892, *cert. denied*, 439 U.S. 928, 99 S.Ct. 313, 58 L.Ed.2d 321 (1978)). When Sections 25–130 and 25–132 are read together, their language is no longer quite so plain, and the applicable penalty is not immediately clear.

By the terms of Section 25–132, the residual penalties are available only when the provision defining the substantive offense does not specify the applicable penalty. Section 25–130 provides for the suspension of driving privileges, and thus is not silent as to punishment. Morrissey argues that the Council must therefore have intended to preclude

application of the residual misdemeanor penalties to Section 25–130 violations.

The discussion of penalties in Section 25–130, however, is not limited to the statement that the punishment for violation of that section is loss of driving privileges. Rather, Section 25–130(c) provides that *"[i]n addition to the penalties provided in § 25–132,* any person who violates any provision of this section shall be subject to the following *additional* penalties: [including suspension of driving privileges for up to one year]." (Emphasis added).

The italicized language is critical in determining whether the legislature subjected violators of Section 25–130 to the residual misdemeanor penalties. Section 25–130 was amended several years after Section 25–132 was enacted, and specifically refers to "the penalties provided in § 25–132."[10] The Council also used the words "in addition" and "additional" when referring to those residual penalties. Indeed, these words were used not once, but twice, in the text of Section 25–130(c).[11] If Morrissey's position were correct, these references to additional penalties and to Section 25–132 would be mere surplusage.

■ "The words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc) (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979)). "Addition" is defined as "[t]he act or process of adding." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 20 (3d ed. 1992). "In addition" means "[a]lso; as well as ... [o]ver

**10.** Morrissey argues that this reference does not include the misdemeanor penalties in subsection (a) of Section 25–132. He contends that the language refers instead to the additional civil penalties provided in subsection (e). But the reference in Section 25–130(c) is to "the penalties provided in § 25–132," and we cannot rewrite the statute to limit that reference to civil penalties when the Council made the allusion to Section 25–132 penalties an unrestricted one.

Alternatively, Morrissey argues that the words "penalties provided in § 25–132" refer to subsection (c), which states that "[p]rosecutions for violations of this chapter shall be on information

filed in the Superior Court for the District of Columbia by the Corporation Counsel...." This contention is unpersuasive. Section 25–132(c) does not specify any penalties, but rather identifies the officer responsible for enforcement of the statute.

**11.** These words were used a third time in the preamble to the act amending Section 25–130, where the Council explained that its purpose was *"to add* the penalty of suspension of driving privileges." 41 D.C.Reg. at 1658 (emphasis added).

and above; besides." *Id.* In simple English, the Council's use in Section 25–130(c) of the terms "additional" and "in addition" means that the suspension of driving privileges is not the only punishment that may be imposed; rather, that sanction is available "as well as," or "over and above," the fine and imprisonment authorized by Section 25–132.

Morrissey contends that, if the Council had intended to make underage possession of alcohol punishable by the residual misdemeanor penalties in Section 25–132(a), it would have specified a fine and imprisonment in the text of Section 25–130. He asserts in his brief that "[t]he Council has shown itself fully capable of specifying penalties, including the misdemeanor penalty, within the individual subsections of the Act." We agree. However, the Council *did* specify a misdemeanor penalty in Section 25–130(c) by making the penalty of suspension of driving privileges available "[i]n addition to the penalties provided in § 25–132." While it is true that the Council could have stated in so many words that the penalties shall include loss of driving privileges, a one thousand dollar fine, and imprisonment for up to one year, the language of Section 25–130(c) accomplishes the same result through incorporation by reference.

Morrissey also argues that the Council could not have intended to make the relatively minor offense of underage possession of alcohol punishable by the severe penalties in Section 25–132(a), including imprisonment. He points out that, from 1993 to 1994, underage possession of alcohol was punishable by a $100 to $300 fine and suspension of driving privileges in the District for up to one year, 40 D.C.Reg. at 5821, and there was no provision for imprisonment. If the Council had intended, in 1994, to make the same conduct subject to the more severe penalties in Section 25–132(a), then, according to Morrissey, such a change would have been mentioned explicitly. He cites this court's decision in *National Org. for Women v. Mutual of Omaha Ins. Co.,* 531 A.2d 274, 276 (D.C.1987), where we stated that "[i]f the Council had intended to effect such a dramatic change in [a statute], it is reasonable to assume that there would have been at least some specific reference to it in the language of the Act or, at least, within its legislative history."

■ Morrissey's argument has surface appeal, especially in light of the apparent incongruity here between crime and authorized punishment. But the Council did make "specific reference" to the newly available misdemeanor penalty when it expressly alluded to the "the penalties provided in § 25–132." *See* D.C.Code § 25–130(c). Furthermore, given the recent statutory history, the changes effected by the 1994 amendments of Section 25–130 were not as dramatic as Morrissey suggests. The Council had previously made the residual misdemeanor penalties in Section 25–132(a), including imprisonment for one year and a $1,000 fine, applicable to offenses that are similar to underage possession of alcohol. From 1986 until 1993, Section 25–130(b) prohibited underage drinking and contained no specific penalty for violation of that prohibition. *See* D.C.Code § 25–130(b) (1991), *amended by* 40 D.C.Reg. at 5821. In the absence of a specific penalty, underage drinking was punishable by the residual misdemeanor penalties in Section 25–132(a). Because the Council had previously treated underage drinking as a sufficiently severe offense to make it punishable by a year's imprisonment and a $1,000 fine, it is not as obvious as Morrissey suggests that the Council intended to foreclose application of these draconian Section 25–132(a) penalties to the offense of underage possession as well. In any event, rather than speculating as to what the legislators subjectively meant, we must faithfully interpret what they objectively wrote.

■ Where, as here, we are asked to determine the meaning of, and discern the interaction between, several statutory provisions, we are especially mindful that "each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous." *Thomas v. District of Columbia Dep't of Employment Servs.,* 547 A.2d 1034, 1037 (D.C.1988) (citations omitted). Although Section 25–132(a) states that the residual penalties are available only when "no specific penalty is provided," we must attempt to reconcile that provision with the

language of Section 25–130, a later-enacted provision. To hold, as Morrissey proposes, that violations of Section 25–130 are punishable only by suspension of driving privileges would render superfluous the words "[i]n addition to the penalties provided in § 25–132." The only reasonable interpretation of that language is that the residual misdemeanor penalties are applicable to Section 25–130 violations.

## C. The Legislative History.

Morrissey also claims that the legislative history of the statute supports his contention that he cannot be imprisoned or fined for underage possession of alcohol. We do not agree. Assuming, without deciding, that the language of Sections 25–130 and 25–132, when those two provisions are read together, is sufficiently ambiguous to warrant a resort to legislative history, that history does not alter the result. In fact, the legislative history sheds almost no light on the question whether the Council intended to make Section 25–130 violations punishable by the residual misdemeanor penalties.

Morrissey points to the following statement made by Councilman John Ray in connection with the 1994 amendment to the statute:

> Mr. Chairman, Members of the Council, [the amendments to Section 25–130 are] in response to comments by the Office of the Corp[oration] Counsel outlined in a memo dated February 23, 1994, which I assume was circulated to all Members of the Council; and the Corp[oration] Counsel raised the issue as to whether or not the proposed sanction of the underage drinking offenses which have been in effect for some time now in the emergency and temporary legislation, but whether or not in particular the suggested penalties is—that is, the loss of driving privilege—which is in the domain of the [Alcoholic Beverage Control] Board under this bill would be more appropriate in the domain of the Metropolitan Police Department. And so the law is

changed to make that clear as to who will have the enforcement authority as it relates to the suspension of the driving license for those who violated the provisions of the underage drinking law.

Remarks at the 24th Legislative Meeting of the Council of the District of Columbia (Mar. 1, 1994).

The foregoing remarks do not resolve the question presented here. Councilman Ray's statement does not necessarily support Morrissey's construction of the statute. Although the Metropolitan Police Department may be the proper enforcement authority as to the loss of driving privileges, cf. D.C.Code § 40–703(b), discussed *supra* at pp. 796–797, nothing in Councilman Ray's comments would preclude the Corporation Counsel from prosecuting Section 25–130 violations in the Superior Court. See D.C.Code § 25–132(c). Once properly before the Superior Court, persons convicted of violating Section 25–130 are subject to the penalties authorized by the statute, including the residual misdemeanor penalties.

 Moreover, this court recently cautioned against relying upon the views expressed by individual legislators during the debates preceding enactment of a statute. See *Chase v. District of Columbia Alcoholic Beverage Control Bd.*, 669 A.2d 1264, 1266, No. 94–AA–184, (D.C.1995) (citations omitted). We explained in *Chase* that

> it is impossible to determine with certainty what construction was put upon an act by the members of a legislative body that passed it by resorting to the speeches of individual members thereof. Those who did not speak may not have agreed with those who did; and those who spoke might differ from each other....

*Id.* 669 A.2d at 1267 n. 3 (quoting *Cortelyou v. United States ex rel. Thorpe*, 32 App.D.C. 20, 29 (1908) (quoting *United States v. Trans–Missouri Freight Ass'n*, 166 U.S. 290, 318, 17 S.Ct. 540, 550, 41 L.Ed. 1007 (1897)).[12]

12. Morrissey draws our attention to a memorandum dated May 27, 1993 from Hon. Vanessa Ruiz, then Deputy Corporation Counsel, and now a judge of this court, to the Council of the District of Columbia. That memorandum addressed proposed changes to the underage drinking provisions of the ABC Act. Ms. Ruiz advised against the imposition of specific penalties for violation

▮▬ Finally, Morrissey asserts that if the Council had intended to provide for such severe penalties for a relatively minor offense, some mention of that intent would have been made in the legislative history. As we have noted in Part IV B, however, it appears that the same penalties were available for conduct similar to Morrissey's from 1986 to 1993, a fact which renders the silence of Councilmembers on this subject considerably less significant.[13]

## V.

## JUDGE SCHWELB'S VIEWS

The result the court is compelled to reach in this case may strike a fair-minded person as counter-intuitive, disproportionate, and unjust. The notion that the ABC Act makes possession of a can of beer by a young man of nineteen a crime punishable, *inter alia*, by imprisonment for one year initially astonished the author of this opinion, and it may surprise some readers as well.[14] A defendant charged with such an offense is entitled to a trial by jury. *See, e.g., Blanton v. City of N. Las Vegas*, 489 U.S. 538, 541–43, 109 S.Ct. 1289, 1292–93, 103 L.Ed.2d 550 (1989). Some may wonder whether citizens of the District of Columbia should be required to serve as jurors in cases like Morrissey's, or whether judges should have the authority to send persons in Morrissey's position to prison at all, and especially for a period longer than the maximum term of incarceration for a drunken driver.

The manner in which this case was handled by the District provides little in the way of reassurance. Morrissey was arrested on the Georgetown University campus five weeks after the alleged offense. According to his counsel, he was in custody for approximately sixteen hours before he was released. It is not at all clear why Morrissey could not have been served on the scene with a citation, or subsequently with a judicial summons. "[I]t makes little sense to jail a man who, when he appears before the judge, will be clearly qualified for release without bail." *Alvarez v. United States*, 576 A.2d 713, 717 n. 7 (D.C.) (quoting *State v. Hehman*, 90 Wash.2d 45, 578 P.2d 527, 529 (1978) (en banc)), *cert. denied*, 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). Moreover, after Morrissey spent a substantial number of hours under lock and key, surely "time served" might reasonably have been viewed as punishment enough. Instead, this young man has been forced to litigate in two courts. Already, he has undoubtedly undergone con-

of Section 25–130, and urged the Council, instead, to make such violations subject to the residual misdemeanor penalties. In 1993, the Council apparently did not adopt Ms. Ruiz' suggestions. But Ms. Ruiz' 1993 memorandum does not aid our construction of Section 25–130 because it referred to a different amendment from the one we have before us today. The legislation under consideration in this case specifically refers to "the penalties provided in § 25–132." At the time Ms. Ruiz' proposal was forwarded to the Council, underage possession was not prohibited under the Act, and her memorandum therefore did not address the question before us.

**13.** Morrissey also contends that the conflict between Sections 25–130(c) and 25–132(a) renders the statute ambiguous, thereby obliging this court to apply the rule of lenity and resolve the ambiguity in Morrissey's favor.

The rule of lenity is a secondary rule of construction. *Luck v. District of Columbia*, 617 A.2d 509, 515 (D.C.1992). The rule "provides that criminal statutes should be strictly construed and that *genuine ambiguities* should be resolved in favor of the defendant." *Lemon v. United States*,

564 A.2d 1368, 1381 (D.C.1989) (emphasis added). "It can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose and legislative history leave its meaning genuinely in doubt." *Id.* (quoting *United States v. Otherson*, 637 F.2d 1276, 1285 (9th Cir.1980), *cert. denied*, 454 U.S. 840, 102 S.Ct. 149, 70 L.Ed.2d 123 (1981)). Contrary to the trial judge's view, the rule of lenity "does not ... require courts to give criminal statutes their narrowest possible interpretation." *Id.* (citing *United States v. Bramblett*, 348 U.S. 503, 509–10, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955)). Because the construction urged on us by Morrissey would render superfluous and ineffective the reference in Section 25–130 to additional penalties specified in Section 25–132, we do not, under all of the circumstances of this case, entertain the kind of "genuine" doubt which would implicate the rule of lenity under *Lemon* and *Otherson*.

**14.** The trial judge understandably found it odd that possession of a can of beer by a nineteen-year old carries a harsher penalty than driving while intoxicated by a forty-year old. *Cf.* D.C.Code § 40–716(b)(1) ($300 fine and imprisonment for 90 days).

siderable financial expense and emotional turmoil, and even today the case may be far from over. One might fairly raise the question whether the end has justified the means.

Private perceptions of unfairness and lack of proportionality do not, however, relieve judges of the obligation to construe legislation in accordance with its terms. If the Council did not intend to make the conduct with which Morrissey has been charged a crime subject to trial by jury and punishable by, *inter alia*, a year in prison, then clarifying legislation should be enacted. Rewriting the statute to make it more humane transcends the judicial function. *Chase, supra,* 669 A.2d at 1268, (citation omitted).

## VI.

### CONCLUSION

The order dismissing the information is reversed. The case is remanded for such further proceedings, consistent with this opinion, as the Corporation Counsel may elect to pursue.

*So ordered.*