*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 13-FM-236

S.M., APPELLANT

v.

R.M., APPELLEE.

Appeal from the Superior Court of the District of Columbia
(DRB-1604-06)

(Hon. Alfred S. Irving, Jr., Trial Judge)

(Argued December 12, 2013                    Decided June 12, 2014)

*Michelle R. Bonner*, for appellant S.M.

R.M., *pro se*.

*Melissa Colangelo*, Children's Law Center, with whom *Katherine Zeisel* was on the brief, for *amicus curiae* in support of child's best interests.

Before GLICKMAN and EASTERLY, *Associate Judges*, and FARRELL, *Senior Judge*.

EASTERLY, *Associate Judge*: This case requires us to interpret the Safe and Stable Homes for Children and Youth Amendment Act of 2007, D.C. Code §§ 16-831.01 to .13, 21-2301 (2012 Repl.), the child custody statute governing transfer of custody to non-parent third parties. Specifically, we consider whether the statutory

parental presumption that custody with a parent is in a child's best interest applies beyond the initial custody transfer decision, to the modification of a third-party custody order.

In May 2006, R.M. ("the aunt") sought custody of T.P., the daughter of her sister S.M. ("the mother"). After a November 2007 hearing at which the Superior Court (the Honorable Fern Flanagan Saddler) awarded the aunt temporary custody of T.P., the mother filed an emergency motion for a stay. However, at a subsequent December 2007 hearing, the mother, who appeared pro se, retracted the allegations she had made in her emergency motion and agreed that custody of T.P. should be given to the aunt. The mother consented to this arrangement with the understanding that, in a year, when she completed treatment for her acknowledged drug problem, she would get her "baby" back. This understanding was affirmed by the aunt, who repeatedly reassured the mother at the hearing that she would regain custody of T.P.

As the parties discussed the custody arrangement, the Superior Court largely remained silent. Although the court did note that the parties would have to file a motion to modify the custody order, it did not explain what such a proceeding would entail. At no point was there any acknowledgment that the aunt's complaint

for custody had to be evaluated under the third party custody statute, D.C. Code § 16-831.01 et seq. (2012 Repl.), or that the third party custody statute recognizes a parental presumption that custody with a biological parent is in a child's best interest. At no point was there any acknowledgement that under the third party custody statute, the mother had three choices: (1) she could preserve her parental presumption by arranging, subject to her revocable consent, a temporary custody situation for T.P. with the aunt; (2) she could stand on her parental presumption and force the aunt to rebut it by clear and convincing evidence; or (3) she could waive the parental presumption by giving irrevocable consent to a custody transfer to the aunt, at which point the only concern in any future modification of custody proceedings would be whether, given a substantial and material change in circumstances, removal of T.P. from the custody of the aunt was in T.P.'s best interest. In fact, as reflected by its January 2008 order granting the aunt sole physical and legal custody of T.P., the Superior Court did not appear to be aware that the third-party custody statute governed these proceedings and cited instead to the intra-parental custody statute, D.C. Code § 16-914 (2012 Repl.).

The mother successfully addressed her drug problem, but she did not regain custody of T.P. Several years passed, during which the mother filed multiple motions to modify the 2008 custody order, as she had been directed to do at the

2007 hearing. It is the resolution of the fourth modification motion that concerns us. The mother, newly represented by counsel, asked the Superior Court (the Honorable Alfred S. Irving, Jr.) to incorporate the parental presumption under D.C. Code § 16-831.05 in its custody modification decision under D.C. Code § 16-831.11. In orders issued in December 2012, the Superior Court declined to apply the parental presumption and rejected the mother's motion for reconsideration. In an order issued in January 2013, the court ruled on the mother's motion for modification, finding that the mother had made a substantial change in her circumstances, but determining that modification of custody was not in the best interests of T.P.[1] These three orders are now on appeal.

The mother's central argument is that the Superior Court erred by not incorporating the parental presumption into its custody modification decision. Although she concedes that the parental presumption under D.C. Code § 16-831.05 ordinarily does not apply when a parent moves to modify a third-party custody order to which the parent initially consented, she argues that such consent must be

---

[1]  In this opinion, all references to actions by the Superior Court between 2007 and 2009 are to Judge Saddler; all references to the actions of the Superior Court after November 2011 are to Judge Irving. The Honorable John H. Bayly, Jr. and the Honorable Zinora M. Mitchell-Rankin were also assigned to this case between 2009 and 2011, but made no rulings pertinent to this appeal. It is unclear why the case was transferred so many times.

knowing and intelligent, and that she did not understand at the December 2007 hearing that she was irrevocably relinquishing custody of T.P. to the aunt. Accordingly, the mother asserts that the parental presumption, having never been properly rebutted or waived at the 2007 hearing, was still in force when she filed the subject motion for modification. The aunt disputes the mother's contention that she did not knowingly consent to an irrevocable transfer of custody and argues that the parental presumption should not apply in this case. Amicus curiae Children's Law Center argues that the parental presumption is categorically inapplicable whenever the Superior Court is considering a motion to modify a custody order to a non-parent.

Examining the text of the modification provision, D.C. Code § 16-831.11, and the third party-custody statute as a whole, we determine that a parent's irrevocable consent to the transfer of custody of her child to a non-parent under D.C. Code § 16-831.05 (a) generally waives his or her parental presumption, such that the presumption will not apply in subsequent modification proceedings. As the third-party custody statute reflects, however, this general rule presumes that a parent's irrevocable consent to a transfer of custody to a third party is given with full knowledge and understanding of what she is consenting to and the consequences of that consent. We conclude that the current appeal presents the

exceptional case in which the record does not support the finding that the mother knowingly and intelligently consented to an irrevocable transfer of custody of her child. We therefore reverse the Superior Court's judgment awarding the aunt sole legal and physical custody of minor T.P., and remand the case for further proceedings consistent with this opinion.

## I.　　Facts and Procedural History

T.P. was born in February 2000 to the mother and J.P. ("the father"), now deceased. In May 2006, the aunt sought custody of T.P. At the time the aunt's complaint was filed, the mother was housed at the D.C. jail. The father, who determined that he was unable to adequately care for T.P. due to his advancing age and failing health,[2] consented to the aunt's complaint for custody. For over a year, little action was taken in the case. In September 2007, the Superior Court held a hearing on the aunt's complaint and took sworn testimony. In November 2007, the parties received a ruling from the bench awarding the aunt temporary sole legal and physical custody with visitation to both parents, and a hearing was scheduled for May 2008 on the issue of permanent custody. Shortly thereafter, the mother

---

[2] The father was 71 years old when the aunt filed the complaint for custody.

filed a pro se emergency motion to stay the entry of the temporary order. The court granted the motion and the case was continued to early December 2007.

In December 2007 the mother, father, and aunt appeared for a status hearing; all were without counsel. The mother then retracted the allegations she had made in her emergency motion for a stay of the temporary order of custody. The mother told the court that she had made arrangements to enter a year-long drug treatment program and that she wished for the aunt to have custody of T.P. until she returned. Instead of simply issuing the order for temporary custody awarded in November, however, the court, sua sponte and without explanation, announced that it would issue an order granting the aunt permanent custody.

The court explained that the order would "say permanent custody, but it does not mean forever." Rather, the court informed the mother that it meant: "[A]nytime you want to change it, you file your motion." To this the mother responded: "I ain't going to want to change—I want her to keep . . . my daughter . . . [u]ntil . . . I come home and complete that program and show my sister that I don't have to use [drugs] to live my life."

The mother's explicit desire to regain custody of her child prompted no comment from the court other than an affirmation that filing a motion would be "all you have to do." After this exchange, the court appeared ready to quickly conclude the proceedings, but then realized that it needed to confirm that the father consented to a permanent transfer of custody to the aunt.

As the court spoke to the father, the mother repeatedly interjected with comments and questions. First, the mother informed the court that she wanted to return to court to regain custody of T.P. "this month next year before Christmas." The court explained that she could come back "whenever [she] want[ed] to do it." When the court asked the father if he consented "to the aunt having sole legal and sole physical custody," the mother asked: "What [does] that mean, legal custody?" The court told her that "it just means that [the aunt] gets to make decisions about education . . . religious affiliation . . . [and] medical issues," but that the aunt and the mother could still confer about these matters. The mother accepted this explanation, but then returned to her questions about regaining custody: "And I still get my daughter back when I . . . complete the program? Excuse me, Your Honor, I get my daughter back?" The aunt quickly responded to this question: "Yes." The court then qualified: "It's not automatic. What I'm trying to tell you

is I'm giving her custody.  If you want to get your daughter back, file a motion with the court."

The mother continued to express confusion, however, telling the court:  "I don't understand that."  Instead of getting an explanation from the court, she ended up in a dialogue with her sister:

| | |
|---|---|
| AUNT: | Just like how you came and filed that [emergency] motion, for to stop me? |
| MOTHER: | I could file a motion to get my baby back? |
| COURT: | Correct. |
| AUNT: | Yeah, we'll do it together, you know? |
| MOTHER: | Okay, let me ask you this in front of the judge. |
| AUNT: | Yes. |
| MOTHER: | When I complete the program, can I have my baby back? |
| AUNT: | Yes, what did I tell you? |
| MOTHER: | Okay. |
| AUNT: | What did I tell you about that? |
| MOTHER: | You told me you want me to go get myself together because you don't want me to die like our brothers died over drugs and you don't want [T.P.] to go into a home. |
| AUNT: | Okay and what did I tell you, I'm [T.P.]'s what? |
| MOTHER: | Aunt. |
| AUNT: | And you are her what? |
| MOTHER: | Mother. |
| AUNT: | And—and—and who going to run— who needs to raise her? |

```
MOTHER:        Her mother.
AUNT:          Right.
MOTHER:        Me.
AUNT:          Yes, yes.
```

The mother and the aunt concluded their conversation with the aunt reassuring the mother that she would bring T.P. to visit. The court, which had been silent during this exchange, then changed the subject, asking the father how to spell his surname and to confirm his date of birth and address.

The hearing concluded shortly thereafter. The aunt and the father thanked the court, and the mother told the court: "I'll see you next year." The court responded: "[T]here's no court date." As the court began to explain, the aunt interrupted:

```
COURT:     If you want to change the . . . order . . .
AUNT:      You have to file the papers.
COURT:     . . . file something.
```

The mother asked one last time, "but it will still be next year, right?" The aunt responded first:

```
AUNT:      Okay, yes.
COURT:     Whenever you file.
MOTHER:    Okay.
AUNT:      Yes.
```

The Superior Court issued a written order in January 2008 awarding the aunt permanent custody of T.P. The court said nothing in its order about the mother's repeatedly expressed desire to regain custody of her child in a year. Instead, the court noted without further discussion that both the father and mother "wish for the plaintiff to have custody of their minor child." Even so, the court did not rest its order on the parents' consent nor cite to any provision of D.C. Code § 16-831 governing awards of custody to non-parent third parties. Rather, the court applied D.C. Code § 16-914 (2012 Repl.), which governs custody determinations "in any proceeding between parents," and makes determinative a "best interest of the child" analysis using a list of statutory factors. Examining these factors, the Superior Court concluded that the aunt was "a fit and proper person to have permanent sole physical custody and permanent sole legal custody of the minor child T.P. until further order of the court," and that to award such custody was "in the best interest of the minor child T.P."

The mother did not appeal the January 2008 order. Rather, over the next three years she sought to regain custody of her daughter by filing a series of pro se motions for modification of this order. In these motions she represented that she had completed drug treatment, that she was no longer using drugs, and that she

wanted to regain custody of her child, but that the aunt was reneging on her promise to return T.P. to her mother. Each motion was denied.

In January 2010, the mother filed her fourth pro se motion to modify custody, which is the subject of the order on appeal.[3] In this motion, the mother asserted that there had been a substantial and material change in circumstances, because, among other reasons, she had her own apartment and a stable job, and because she had attended anger management classes, GED classes, and parenting classes. A few months later Our Place DC assumed representation of the mother, and in June 2010 counsel submitted an array of supporting documentary materials to the court, including a letter from the mother's supervisor at the National Center for Children and Families where she completed the Nurturing Parent Program, a certificate of completion of that program, a letter from the principal of T.P.'s former elementary school where the mother works, an email from the D.C. Children's Advocacy Collaborative concerning the mother's contribution to a community program for teen girls, a psycho-social assessment conducted by Our

---

[3] We note that neither the aunt nor amicus curiae Children's Law Center contends that any of the Superior Court's previous denials of the mother's motions for modification were merits-based such that her fourth motion to modify custody was barred by res judicata.

Place DC, and confirmation of negative results in random drug tests given by the organization.[4]

The hearing on the mother's fourth motion for modification of custody was finally held in December 2012.[5] Prior to the hearing, the court (now Judge Irving) ruled on the mother's motion to incorporate the parental presumption under D.C. Code § 16-831.05 in its custody modification decision under D.C. Code § 16-831.11. The mother argued that she had not given irrevocable consent to a transfer of custody to her sister and that the parental presumption had, accordingly, not been properly waived at the 2007 hearing.

The Superior Court denied the motion, determining that Judge Saddler had "informed" the mother "that she would not forever be precluded from seeking

---

[4] Because the mother did not test positive on any of the court-ordered drug tests administered between June 2010 and August 2011, the Superior Court eventually discontinued drug testing of the mother. The court later credited the mother's testimony that she has not used drugs since June 2008.

[5] It is not clear from the record why the case languished for two and a half years. In the summer of 2010, the Superior Court ordered a home study, a psychological evaluation of the mother and father, and bonding studies for T.P. and all parties. All these studies were completed by April 2011. In November 2011, seventeen months after the mother filed her motion for modification, the court set the case for trial. But that date did not hold. Instead, the court granted several continuances to the aunt and the guardian ad litem appointed to represent T.P. In the meantime, T.P.'s father died in October 2011.

custody in her own right, but that she would have to file a motion to seek a change." The Superior Court also found that Judge Saddler had "indicated, perhaps not clearly enough for [the mother], that her written request would not necessarily result in an automatic grant [of modification], but would require a hearing and a best interest determination." Although the Superior Court acknowledged that there were "portions of the transcript" that show that the mother and aunt "contemplated a time and circumstances (her complete recovery from drug use and abuse) when [the mother] would be able to care for" T.P. and when the aunt would be "receptive to returning the child" to her mother's care, "[t]he transcript reveals that Judge Saddler after sufficient and patient inquiry, was satisfied that [the mother] understood that the custody order was permanent, and that [the mother] would have to return to court to obtain a change." "As such" the Superior Court found "no indication on the record" that the mother did not give irrevocable consent to a transfer of custody of T.P. to the aunt under D.C. Code § 16-831.05 (a).

Against this factual backdrop, the Superior Court then considered "whether the parental presumption (under D.C. Code § 16-831.05) applies in a modification proceeding where custody has been awarded to a third party." Analyzing the statutory section that provides for the modification of a third-party custody order,

D.C. Code § 16-831.11 (a), the Superior Court concluded it did not. The mother moved for reconsideration of the court's ruling on her motion to apply the parental presumption to the modification decision, but this motion was denied.

After hearing testimony on December 18 and 19, 2012, the court based its decision on the mother's motion to modify custody solely on whether the standard set forth in D.C. Code § 16-831.11 (a)—i.e., whether there has been a substantial and material change in circumstances and whether the modification would be in the child's best interests—had been met. The court acknowledged that the mother had undergone a "drastic change in behavior and attitude." Specifically, the Superior Court noted that the mother "no longer uses drugs, and has not been arrested since 2008," that she "attended several parenting classes and seminars, as well as obtained part-time employment," and that she "volunteers at a local elementary school." The court also acknowledged that the mother had "put forth numerous witnesses vouching for the change in her demeanor, behavior[,] and maturity over the last two years." The court "commended" the mother for this turn-around, but nonetheless determined that, although this constituted a "substantial change" under the statute, modification of the custody order was not in the best interests of T.P. This appeal followed.

## II.     Analysis

Title 16 of the D.C. Code contains two chapters that address child custody determinations. The first is Chapter 9, which concerns the divorce or separation of individuals with children; the provision therein addressing child custody determinations between parents, § 16-914, contains no mention of a parental presumption for obvious reasons. The second is the more recently codified Chapter 8A, which addresses custody awards to non-parent third parties.

The Council of the District of Columbia enacted Chapter 8A as part of the Safe and Stable Homes Act in 2007. This legislation was at least in part a response to this court's decision in *W.D. v. C.S.M.*, 906 A.2d 317 (D.C. 2006), which determined that the Superior Court had exceeded its statutory authority in awarding custody of a child to non-parent third parties in a domestic relations case. D.C. Council, Comm. on Pub. Safety & the Judiciary, Report on Bill 17-41 at 2 (June 4, 2007) [hereinafter "Judiciary Comm. Report"]. The Council gave courts limited authority to grant a non-parent third-party[6] custody of a child, while at the same

---

[6]     Specifically noting that it was "mindful of the sanctity of parent[s'] rights," the Committee "narrowly tailored this bill's third party standing in order to show consideration of those rights." Judiciary Comm. Report at 2. *See* D.C. Code § 16-831.02 (addressing who may seek custody of a child as a third party).

time "recognizing and enforcing the constitutional rights of parents." Safe &
Stable Homes for Children & Youth Amendment Act of 2007, D.C. Law 17-21; 54
D.C. Reg. 6835 (2007).[7] To this end, D.C. Code § 16-831.05 (a) expressly
acknowledges that "there is a rebuttable presumption in all proceedings under this
chapter that custody with the parent is in the child's best interests."

Under the third party custody statute, the statutory parental presumption
must be dealt with in one of three ways before a third party custody order is
entered. First, the parental presumption may be preserved if the parent enters into
a revocable, court-approved[8] custody agreement with a third party. D.C. Code
§§ 16-831.06 (d)(1); 16-831.11 (c). The court will memorialize this consensual
agreement in an order, D.C. Code § 16-831.06 (d)(1), but "upon the filing of a

---

[7] *See* D.C. Council, Comm. on Human Servs., Report on Bill 17-41 at 4-5
(Mar. 23, 2007) (quoting a statement from former D.C. Superior Court Judge Eric
Holder stating that the Act "provides a clear framework to protect the rights of
parents"); *id.* at 5-6 ("The Supreme Court has recognized that natural parents have
a fundamental liberty interest . . . in the care, custody, and management of their
children, which is protected by the Fourteenth Amendment's Due Process Clause. .
. . Natural parents do not lose this constitutionally protected right simply because
they have not been model parents or have lost temporary custody of their child to
the State." (citing this court's opinion in *In re C.M.*, 916 A.2d 169, 179 (D.C.
2007))).

[8] The court may reject this agreement if it determines it is not in the best
interest of the child. D.C. Code § 16-831.06 (d)(1).

revocation by the consenting parent or the third party" this order "shall be immediately vacated and of no further effect." § 16-831.11 (c).

Second, the parental presumption may be overcome if the third party seeking custody of the child can rebut the presumption by clear and convincing evidence. D.C. Code §§ 16-831.06 (b), 16-831.07 (a), (d). Once rebutted, the court may consider whether custody with a third party is in the best interest of the child under the factors set forth in D.C. Code § 16-831.08. However, "[i]f the court concludes that the parental presumption has not been rebutted by clear and convincing evidence, the court shall dismiss the third-party complaint and enter any appropriate judgment in favor of the parent." D.C. Code § 16-831.07 (d).

Third, the parental presumption may be waived "when a parent consents to the relief sought by the third party." D.C. Code § 16-831.05 (a). Read in conjunction with D.C. Code §§ 16-831.06 (d)(1) and 16-831.11 (c), which acknowledge a parent's statutory option to give revocable consent to a third-party custody arrangement, this provision only makes sense if the consent given under D.C. Code § 16-831.05 (a) is irrevocable.

The mother argues that the Superior Court failed to apply the correct law in its January 2008 order granting custody to the aunt, because the court should have applied the provisions of Title 8A of Chapter 16 protecting her rights as a parent instead of the provisions of Title 9 of Chapter 16 governing intra-parental custody disputes, which contain no such protections. While it seems clear that the Superior Court did not apply the correct law, that is not, and cannot be, the issue before us. The mother never appealed the 2008 custody order. The only orders that are before this court are the Superior Court's 2012 and 2013 orders resolving the mother's fourth motion to modify custody.

The question thus becomes whether the parental presumption that is statutorily acknowledged in proceedings to transfer custody of a child from a parent to a third party may be considered in modification of custody proceedings conducted pursuant to D.C. Code § 16-831.11. The mother argues the parental presumption should have been applied in the consideration of her fourth motion for modification of custody, because she did not knowingly and intelligently waive this presumption at the December 2007 hearing. Amicus defends the Superior Court's determination that the parental presumption does not apply in custody modification determinations under D.C. Code § 16-831.11. Moreover, going a step beyond the Superior Court—which found that the mother had knowingly

consented to a permanent custody transfer to the aunt[9]—amicus argues that there is no statutory requirement that waiver of parental rights must be knowing and intelligent, and that the parental presumption would not apply at the modification stage even if the mother had not knowingly or intelligently consented.  We review these questions of law de novo.  *District of Columbia v. Morrissey*, 668 A.2d 792, 796 (D.C. 1995) (noting this court conducts de novo review where "[t]he construction of a statute raises a clear question of law." (internal quotation marks omitted)).

We begin with the text of D.C. Code § 16-831.11,[10] governing modification of third party custody orders.  It contains three subsections, none of which make any mention of the parental presumption.  Subsection (a) sets forth the standard

---

[9]    Judge Irving appears to have understood waiver of the parental presumption to require knowing and intelligent consent.  His order with regard to the application of the presumption hinged in large part upon his determination that "after sufficient and patient inquiry," Judge Saddler was "satisfied that [the mother] understood that the [c]ustody [o]rder [would be] permanent, and that [she] would have to return to Court to obtain a change."  He found that the mother "indicated more than once that she understood, and maintained her consent," and further, that there was "no indication on the record that [she] did not consent to [the aunt] having custody of the minor child."

[10]    *Morrissey*, 668 A.2d at 797 ("[I]f the words are clear and unambiguous, we must give effect to its plain meaning." (internal quotation mark omitted)); *see also Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983).

under which modification decisions are made: To modify custody there must be a "determination that there has been a substantial and material change in circumstances and that the modification or termination is in the best interests of the child." Subsection (b) places the burden of proof on the party seeking modification and requires a showing by a preponderance of the evidence. As discussed above, subsection (c) carves out from the typical modification standard awards of custody based on revocable consent under D.C. Code § 16-831.06 (d)(1), and provides that modification under such circumstances is self-executing and not submitted to the court for review; rather, "upon the filing of a revocation by the consenting parent or the third party," the agreement of the parties "shall be immediately vacated and of no further effect."

As we read D.C. Code § 16-831.11, unless the custody transfer was made pursuant to a revocable consent agreement (in which case the parental presumption remains fully intact and is not relevant to modification because the parent can unilaterally decide to modify the arrangement), the parental presumption does not apply at the modification stage. A parent seeking to regain custody awarded to a third party enjoys no special status and must bear the burden of proof when seeking to modify an order. The only statutory concern under these circumstances is the best interest of the child.

This makes sense against the backdrop of D.C. Code §§ 16-831.05 and 16-831.06.[11] If a parent's statutory presumption has already been rebutted (pursuant to D.C. Code § 16-831.06) or waived after a parent gives her irrevocable consent to the custody transfer (pursuant to D.C. Code § 16-831.05 (a)), there is no need to revive the parental presumption at the modification stage. To do so would seem contrary to the clear legislative intent to give parents heightened protection when initial custody transfer decisions are made, but to make determinative the best interest of the child after custody has been transferred to a third party.

The mother clarified at oral argument before this court, however, that her argument is not that the parental presumption must always be considered in modification determinations, but only when a parent, like her, does not knowingly and intelligently give irrevocable consent to a custody transfer. We find this argument compelling.

Again, we note that the statute was written with a strong desire to protect the rights of parents, requiring that for other-than-revocable consent transfers the

---

[11] *See In re T.L.J.*, 413 A.2d 154, 158 (D.C. 1980) ("a statute should be interpreted as a harmonious whole" (quoting *United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072, 1079 (D.D.C. 1978)) (internal quotation mark omitted)).

statutory presumption be rebutted or waived at the outset. It would make little sense, however, to provide robust protection for parental rights for the former mechanism for disposing of the parental presumption—requiring the third party seeking custody of the child to bear the high burden of rebutting the parental presumption by clear and convincing evidence—but to provide only weak protection with the latter, by liberally recognizing irrevocable consent-based waivers without assurance that those waivers were knowing or intelligent.[12]

Ultimately our analysis turns on the language of D.C. Code § 16-831.05, which provides that the parental presumption has no application "when a parent consents to the relief sought by the third party." In our view, this statutory

---

[12] We note that in other states where the transfer of custody to non-parent third parties is permitted, the valid waiver of parental rights is premised on a meaningful understanding of the effects of their actions. For example, the Tennessee Supreme Court has emphasized "that a parent's voluntary relinquishment of custody must be made with knowledge of the consequences of that decision," asserting that where a natural parent does so "without knowledge of the effect of that act, then it cannot be said that these rights were accorded the protection demanded by the Constitution. As such, application of the [parental presumption] in a subsequent modification proceeding would be justified." *Blair v. Badenhope*, 77 S.W.3d 137, 147 n.3 (Tenn. 2002). Similarly, the Alaska Supreme Court explained that it did not "disfavor the practice of vesting custody temporarily in a nonparent until a parent can get his or her life sufficiently together to resume custody," but noted that "[c]ourts should make clear whether a grant of nonparental custody is temporary or permanent, and ensure that they carefully warn a parent that a hearing may have the latter result." *C.R.B. v. C.C.*, 959 P.2d 375, 381 n.12 (Alaska 1998).

language conclusively indicates that, to give irrevocable consent to a third-party custody transfer and thereby effect a valid waiver of the parental presumption, there must be a meeting of the minds between the parent and the third party regarding "the relief sought." *Id.* Clearly, if a parent believes that she is consenting to a provisional custody arrangement, but the third party is seeking a permanent custody transfer, the parent is not providing irrevocable "consent[] to the relief sought by the third party."[13]

Reviewing the transcript of the December 2007 hearing, the Superior Court in this case made the factual determination that the mother knew she was agreeing to permanently relinquish custody of T.P. to her sister and Judge Saddler

---

[13] As previously discussed, we recognize that the fundamental right to parent has constitutional underpinnings. *See Troxel v. Granville*, 530 U.S. 57, 87 (2000) ("Our cases leave no doubt that parents have a fundamental liberty interest in caring for and guiding their children . . . . [and] our cases applying this principle have explained that with this constitutional liberty comes a presumption (albeit a rebuttable one) that 'natural bonds of affection lead parents to act in the best interests of their children.'" (quoting *Parham v. J.R.*, 442 U.S. 584, 602 (1979))); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"). Given the statutory foundation for our analysis, however, we do not assess the impact of these constitutional principles on this case. *Blodgett v. Univ. Club*, 930 A.2d 210, 217 (D.C. 2007).

adequately apprised her of the consequences of her consent.[14]  We conclude that this factual determination was plainly wrong and without evidence to support it.[15]

The transcript of the December 2007 custody hearing indicates that the mother, appearing pro se, did not intend to permanently give up custody of T.P. to the aunt.  Although Judge Saddler told the mother that the order would "say permanent," she immediately undercut this admonition by stating that it "does not mean forever," and informing the mother she could file a modification motion.  Moreover, from the mother's subsequent statements on the record, it is apparent that she thought that she was consenting to a temporary arrangement and that she intended to file a modification motion as soon as she completed treatment, within a year.  Indeed, the aunt, whom the court allowed to engage in a lengthy dialogue in open court with the mother, was integral in leading the mother to believe that she would only have custody of T.P. temporarily.  The aunt repeatedly reassured the

---

[14]  Judge Saddler made no such factual findings in her order:  She simply found that the mother "testified that [the aunt] can devote her full time and attention to the minor child," and noted in her discussion of the D.C. Code § 16-914 best interests analysis that the mother "wish[ed] for the [aunt] to have custody" of T.P.

[15]  *Hernandez v. Banks*, 84 A.3d 543, 552 (D.C. 2014) ("We review bench trials both as to the facts and the law, but may not set aside a trial court's judgment 'except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it.'" (quoting D.C. Code § 17-305 (a) (2012 Repl.))).

mother that when the mother "complete[d] the program" she could "have [her] baby back," because T.P. needed to be with the mother.

Relatedly, the mother did not understand the consequences of giving her consent to a transfer of custody to the aunt. Certainly the mother understood that she would need to take certain steps to regain custody of T.P.: she needed to "get [herself] together," and she needed to file a motion. Indeed, Judge Saddler imprecisely informed her that that was "all you have to do." But the mother does not appear to have understood that these steps would not be pro forma and that custody of T.P. would not immediately be returned to her upon taking such actions. In particular, she does not appear to have understood that she was permanently losing her special status as parent to maintain custody of her child, and thus, that in order to regain custody of T.P. she would have to prove to the satisfaction of the court not only that she met the aforementioned goals constituting "a substantial and material change in circumstances," but also that it would be in her daughter's best interests to be returned to her care. *See* D.C. Code § 16-831.11 (a).

The mother does not appear to have understood this, because, the Superior Court's finding notwithstanding, Judge Saddler never so advised the mother. Although the Superior Court found that Judge Saddler indicated "that [the

mother's] written request would not necessarily result in an automatic grant, but would require a hearing and a best interest determination," in fact, contrary to the Superior Court's findings, there was no mention at the December 2007 hearing that that any modification motions filed by the mother would turn solely on what a court deemed was in the "best interests of the child." Meanwhile, the aunt indicated that she would not oppose an effort by the mother to regain custody and that she and the mother would petition the court "together" to make this happen.[16]

To assess the mother's understanding of the nature and consequences of her consent to a custody transfer, we look not only to what was said (and unsaid) at the December 2007 hearing, but also to what the mother did afterwards. As instructed, she filed repeated motions to modify the custody order, in which she asserted that she had successfully completed treatment and gotten her life back together, but that although she had upheld her end of the bargain, the aunt had "betray[ed] [her] trust." In so doing, the mother reflected her understanding that the transfer of

---

[16] To the extent the Superior Court relied on Judge Saddler's January 2008 order to determine that the mother knowingly and intelligently consented to an unconditional custody transfer, this gives us further cause for concern. The 2008 order simply does not capture what the mother said at the hearing or the qualified nature of her consent.

custody had not been permanent and that she thought she had an enforceable agreement with her sister to have T.P. returned to her.

Accordingly, we determine that the mother did not knowingly and intelligently consent to a permanent transfer of custody as the statute requires. And because there was no meaningful consent, the parental presumption must be applied, for the first time, in the Superior Court's resolution of the mother's fourth motion to modify custody. Unless the parental presumption is rebutted on remand (or unless the mother conveys new legitimate consent to the aunt's continued custody of T.P.), the mother's motion for modification may not be denied.[17]

---

[17] The mother argues in the alternative that there is no need for her to seek modification of the third party custody order because, in fact, she had a revocable consent agreement pursuant to D.C. Code § 16-831.06 (d). But the mother did not cite this provision of the statute nor raise this issue below until she moved for reconsideration of the Superior Court's order declining to incorporate the parental presumption under D.C. Code § 16-831.05 in its custody modification decision under D.C. Code § 16-831.11. Even as she invoked the revocable consent provisions of the third party custody statute, the mother acknowledged that her consent agreement was not unilaterally revocable as contemplated by D.C. Code § 16-831.06 (d) and D.C. Code § 16-831.11 (c), but instead was an (extra-legal) conditional consent agreement, subject to revision by the Superior Court. In this court, the mother continues to acknowledge that her agreement "was to be revisited by the [c]ourt for determination of fulfillment of its conditions." Although, as explained above, we conclude that the agreement struck between the mother and the aunt preclude this court from determining that the mother consented to an irrevocable permanent custody transfer and that she knowingly and intelligently waived the parental presumption, we cannot agree that the mother entered into a

(continued…)

We conclude by emphasizing that we do not intend for this decision to give a green light to parents seeking to upend truly consensual irrevocable custody transfers to nonparent third parties. In other words, we do not herein accord parents the right to revive in modification proceedings a legitimately waived parental presumption. We presume that the facts of this case are exceptional, and moreover, that in the future the Superior Court will both ensure that parents, particularly those proceeding pro se, understand the special status they relinquish if they give irrevocable consent to a transfer of custody to a third party, and understand how their consent fundamentally alters the child custody calculus going forward. Consent knowledgeably and intelligently given will permanently waive a parent's statutory parental presumption.

For the reasons set forward above, we reverse the Superior Court's order denying the mother's motion to modify custody and remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

(…continued)
revocable consent agreement within the meaning of D.C. Code § 16-831.06 (d) and D.C. Code § 16-831.11 (c).